[Filed June 21, 1892.]

## J. P. BOWEN *v.* JOHN G. CLARKE et al.

Jury Trial — Instructions — Abstract Propositions of Law.— It is erroneous to instruct the jury on abstract propositions of law however correct they may be in theory.

Landlord and Tenant — Abandonment of Premises — New Tenant — Measure of Damages.— When a tenant wrongfully abandons leased property, the landlord may re-enter the premises for the purpose of caring for the same without waiving his rights under the lease; and he is not bound to find a new tenant for the property; but if he does rent the same to a new tenant, his measure of damages for a breach of the old lease is the difference between the rent under the old lease and the less amount he receives under the new one.

Baker county: M. D. Clifford, Judge.

Plaintiff appeals. Reversed.

It appears from the complaint that on June 10, 1890, the defendants leased of the plaintiff a certain building situated in Baker City, Oregon, for the term of three years, for which they agreed to pay one hundred dollars per month, payable on the first day of each month during the continuance of the lease; that defendants entered into the possession of said premises, and continued to occupy the same under said lease, and paid the rent therefor until the thirty-first day of January, 1891, at which time the defendants abandoned said premises, and thereafter refused to pay the rent or any part thereof agreed in said lease to be paid. The action is for the recovery of the rent for the months of February, March, and April, 1891.

The answer admits the leasing, and the non-payment of the rent; but alleges that on the thirty-first day of January, 1891, said lease was cancelled and surrendered, and that on said day the plaintiff entered into and took the actual possession of said premises, and received the keys thereof, by and through the mutual understanding and agreement of the respective parties thereto, that said lease was cancelled, surrendered, void, and of no effect; and that in pursuance of said agreement the plaintiff has been at

all times since and is now in the actual and exclusive possession of said premises, and at all of said times has been offering the same to rent to other parties.

The reply denied the new matter contained in the answer. The jury returned a verdict for the plaintiff in the sum of one dollar, upon which judgment was entered, and from ·which the plaintiff has brought this appeal. The questions argued here arise entirely on the exceptions taken to the instructions given upon the trial, which are stated at large in the opinion.

*Williams & Smith,* for Appellant.

*Hyde, Johns & Olmstead,* for Respondents.

Strahan, C. J.—There was but one witness introduced upon the trial, and that was the plaintiff. The lease was also read. The court gave the jury the following instructions: "If you find from the evidence in this action that the defendants or their agents delivered the keys to the plaintiff, and surrendered up the premises to the plaintiff, with the understanding and agreement that the lease should become terminated, and the plaintiff took possession of the premises with that understanding and agreement, then I instruct you that you must find for the defendants. But you must find, ·gentlemen of the jury, from the evidence that these keys were surrendered up by the defendants themselves, or by some one authorized by them to act as their agents." This instruction was excepted to, and presents the first question on this appeal. The appellant's point of exception is, not that this instruction is not good law, but that it is wholly inapplicable to the facts appearing in evidence. The appellant concedes that as an abstract proposition of law the instruction is sound, but his contention is, that there was no evidence whatever before the jury upon which such an instruction could be based. On the contrary, the only evidence before the jury upon the question of the intent with which the plaintiff received the

keys, is just the reverse of what is assumed by the instruction.

The same is true as to the alleged understanding and agreement that the lease should become terminated, as well as the surrender of the premises to the plaintiff. The defendants removed from said premises without the plaintiff's knowledge or consent, and then sent him the keys by one Pringle, which the plaintiff received for the purpose of caring for the building, at the same time informing Pringle that he would hold the defendants for the rent, and the keys subject to their order. There was, therefore, no fact in evidence before the jury upon which this instruction could have been predicated.

We have several times held that abstract propositions of law, however correct in themselves, are necessarily misleading and mischievous. They tend to draw the minds of the jurors away from the real facts in the case to something which they assume to exist, but which cannot be found in the record. (*Morris* v. *Perkins*, 6 Or. 350; *Hayden* v. *Long*, 8 Or. 244; *Marx* v. *Schwartz*, 14 Or. 177; *Breon* v. *Hinkle*, 14 Or. 494; *Glenn* v. *Savage*, 14 Or. 567; *Langford* v. *Jones*, 18 Or. 307; *Woodward* v. *O. R. & N. Co.* 18 Or. 289; *Bailey* v. *Davis*, 19 Or. 217; *Rowland* v. *McCown*, 20 Or. 538; *Knathla* v. *O. S. L. R. R. Co.* 21 Or. 136.)

The court also gave the jury the following instruction, to which an exception was duly taken: "If the plaintiff did take possession of said premises, and has tried to rent the same to other parties, I instruct you that this is evidence that tends to show that the lease was surrendered up and canceled by the consent of the parties thereto, but of itself is not sufficient to constitute a surrender." What the court meant by this instruction, when considered in the light of the evidence, is not quite apparent. It appeared upon the trial that plaintiff received the keys from Pringle, and entered into the possession of said property for the purpose of caring for it; but it is going too far to say that this is

evidence that tends to show that the lease was surrendered up and canceled by the consent of the parties thereto. It is but a circumstance, and taken in connection with other facts which could readily be imagined, might be entirely controlling on the question of surrender; but the other facts no where appeared, which is probably the reason the court added that the fact mentioned in the instruction would not of itself be sufficient to constitute a surrender.

In a civil action, where evidence is submitted which tends to prove a fact in controversy, a jury may find the fact from such evidence, if they think proper, and the court cannot deny them that right. It is therefore manifest that the court sought to attach entirely too much importance to the delivery of the keys of the building to the plaintiff and his attempt to re-let the premises. The legal effect of those acts depended very much with what intent the keys were delivered to the plaintiff, and with what intent, and for what purpose, he accepted the same. The defendants had abandoned the premises at that time, and no doubt were anxious to surrender the same, but they could not, without the plaintiff's consent, relieve themselves from liability under the lease; and the plaintiff's words at the time he received the keys are the only evidence in the case on that subject. He then expressly informed Mr. Pringle that he would not release the defendants, and that he would hold them for the rent, and that the keys were subject to their order.

The court gave this instruction to the jury: "If the lease was surrendered up and canceled by the parties with their mutual consent, then the plaintiff cannot recover in this action for any rent after such cancellation." The giving of this instruction was error for the same reasons presented in discussing the first exception. As an abstract proposition of law, it is correct, but there was no evidence whatever before the jury that would authorize it.

The court also gave this instruction: "I instruct you that it is not necessary that the lease should actually be surrendered up and cancelled, but you may find this from the acts and the intentions of the parties, and their conduct in relation to the same." This instruction was misleading for the same reasons as the first and third, and also for another reason: it virtually invited the jury to enter the field of speculation, and to conjecture, if they could, some cause for annulling plaintiff's lease. There were no acts of the parties in evidence from which said conclusion could have been drawn, and there was no way that the intentions of the parties could be known, other than from what they did and said. Besides, the intentions of the party on one side would not have been enough. To constitute a surrender, both must have concurred in the act.

The court further instructed the jury as follows: "I instruct you that if you find from the evidence that the plaintiff did take possession and receive the keys, it was then the duty of the plaintiff to rent the building, if he had the opportunity to do so, and receive the rent and give the defendants credit for the amount received." Upon the argument in this court, counsel for respondent was unable to cite a single authority to sustain this instruction; and it is not apparent to us under the facts in the case how such a duty on the part of the landlord could originate. So far as appears, the defendants abandoned said premises wrongfully and without cause. The plaintiff, as a prudent landlord, was not bound to refuse to care for his premises, nor was he bound to accept another as his tenant who was not satisfactory to him. The defendants had every opportunity of thus protecting themselves before they abandoned the house, had they thought proper. They could not by their own wrong, in abandoning the premises, impose that duty on the plaintiff; or, if he refused to accept the keys, to take the chances of the serious deterioration of the prop-

erty by reason of its being neglected.   He was the owner, and had the right to accept the keys for the purpose of caring for his property, without waiving his rights under the lease.

The court also gave to the jury this instruction:   "I instruct you that if you should find that the lease was not terminated or cancelled, and the plaintiff took possession of the premises and received the keys, and that responsible parties made him a *bona fide* offer to rent the building, and that plaintiff refused to rent the building, then the plaintiff can only recover the difference between the rent stipulated in the lease and the amount for which the premises could have been rented."   Much of what was said in relation to instruction five is also applicable here.   If the plaintiff had accepted a new tenant, as the authorities seem to hold he might have done, without effecting a surrender of the premises, he was not bound to do so.   (*Respini* v. *Porta*, 89 Cal. 464 ; 23 Am. St. Rep. 488.)   Yet if he did re-let them, the measure of his recovery would be the difference between the two sums.   (*Winant* v. *Hines*, 14 Daly, 187.)   But there was manifestly no legal duty resting on the plaintiff to re-let the premises.   He had the defendants as his tenants under a valid lease, and we know of no law that would enable them, without the consent of the plaintiff, to repudiate their contract, and to exact a release from the plaintiff, and compel him to accept another tenant in their stead.

For the reasons indicated in this opinion, the judgment must be reversed, and a new trial ordered.