Argued October 9, reversed and remanded October 23, 1917.

## STAMM *v.* WOOD.*

(168 Pac. 69.)

**Estoppel—Pleadings—Sufficiency.**

1. In an action for breach of marriage promise, a plea that plaintiff was estopped to sue because defendant and another woman were engaged to plaintiff's knowledge, and that she discussed the engagement with defendant, and did not claim an engagement with him herself, is insufficient to raise an estoppel.

> [As to defenses to actions for breach of promise to marry, see note in 40 Am. St. Rep. 172.]

**Breach of Marriage Promise—Evidence—Admissibility.**

2. Statements of plaintiff showing her knowledge of defendant's engagement to a third person, though insufficient to raise an estoppel against her, were admissible under the general issue.

**Appeal and Error—Harmless Error.**

3. Striking a special defense based on estoppel against plaintiff to sue was harmless, where the evidence relied on to show the estoppel was admitted, and defendant had the full benefit thereof.

*On right to prove seduction in aggravation of damages in breach of promise case, see notes in 4 L. R. A. (N. S.) 616; 36 L. R. A. (N. S.) 388. REPORTER.

Pleading—Striking Pleadings—Motion—Sufficiency.

4. A motion to strike a pleading on the ground that in a prior answer a demurrer to a similar defense was sustained was sufficient to present the ground that the answer was frivolous under Section 76, L. O. L.

Estoppel—Pleading.

5. In order to entitle a party to a suit or action in this state to rely upon an estoppel *in pais*, it is incumbent upon him to set forth in his pleading the facts constituting such bar if he have a chance to do so; but where no opportunity arises to plead such estoppel, and the necessity therefor occurs at the trial on the admission of evidence, the truth of the plea may be established in the absence of any averment.

Appeal and Error—Presumptions.

6. Where evidence touching an estoppel *in pais* was admitted without pleading such facts, and the bill of exceptions fails to show that no evidence justifying an instruction based on the estoppel was introduced, it must be presumed on appeal that testimony was received authorizing the instruction.

Breach of Marriage Promise—Estoppel in Pais.

7. If the acts of defendant were such as to induce the plaintiff to believe that there was an engagement between them to marry, and plaintiff acted on that belief, and defendant, knowing plaintiff was acting thereon, continued thereafter to act in a manner to induce such belief, the law would not permit defendant to deny an existence of the engagement.

Breach of Marriage Promise—Evidence of Promise—Sufficiency.

8. No particular words are necessary to give rise to a contract to marry; it is sufficient that the minds of the parties have met and that the engagement to marry is mutually agreed on.

Breach of Marriage Promise—Instructions—Damages.

9. Instruction that if the promise existed, the jury should assess damages and could take into consideration all the circumstances in evidence, while subject to criticism for omission of the words "if any have been suffered" after the word "damages," was not erroneous, as it properly stated the elements of compensatory damages.

Trial—Instructions—Circumstantial Evidence.

10. In action for breach of marriage promise, aggravated by seduction, wherein plaintiff testified to a definite promise to marry, and could have testified directly to the seduction, but did not, it was error to instruct that as to the latter, it could be proved by circumstantial evidence.

Trial—Instructions.

11. Under Section 868, subdivision 7, L. O. L., the court should instruct the jury that if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust.

Breach of Marriage Promise—Instructions.

12. In action for breach of marriage aggravated by seduction, where plaintiff testified to the engagement and to the sexual act, she could not recover without testifying that such act was permitted because of or in reliance upon the engagement to marry, and an instruction that such fact might be inferred was error.

Evidence—Presumptions.

13. Under Section 796, L. O. L., an inference must be founded upon a fact legally proved, and not upon a presumption.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.    Statement by MR. JUSTICE MOORE.

This is an action by Daisy Stamm against John A. Wood to recover damages for an alleged breach of a mutual promise of marriage and for seduction averred to have been brought about by the defendant through the plaintiff's reliance upon such promise.

The answer denied all the material averments of the complaint, and for a further defense alleged, in effect, that the plaintiff ought not to be permitted to say that a contract of marriage was ever entered into by the parties, for that in the year 1912 the defendant and Myrtle Roberts mutually engaged to marry, the ceremony of which was not to be performed until after the death of his mother, who was then ill; that during his courtship of Miss Roberts, which wooing was well known to the plaintiff, she discussed such engagement with him and other members of his family; that at no time prior to the commencement of this action did the plaintiff ever claim or assert that she was engaged to marry him; and that as a result of his betrothal he and Miss Roberts were married July 15, 1915, after the death of his mother. The answer did not allege, however, that in consummating such union the defendant relied upon the plaintiff's alleged conduct, that he was deceived thereby, or that in consequence thereof he was induced to assume a relation which he would

not otherwise have undertaken. A motion was sustained to strike out the further defense on the ground that it was incompetent, irrelevant, and immaterial, and that in a prior answer herein a demurrer to a similar defense was sustained. The cause was thereupon tried resulting in a verdict and judgment for the plaintiff in the sum of $3,000, and the defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Cicero M. Idleman* and *Messrs. Clark, Skulason & Clark,* with oral arguments by *Mr. Malcolm H. Clark* and *Mr. Idleman.*

For respondent there was a brief over the names of *Mr. Elton Watkins* and *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. Watkins.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended that an error was committed in striking out the separate defense. The matter thus set forth was evidently designed as a bar or impediment raised by law to prevent the plaintiff from alleging or denying a fact in consequence of her own previous act, allegation, or denial to the contrary. The facts stated were insufficient for the purpose contemplated. Thus in *Haun* v. *Martin,* 48 Or. 304 (86 Pac. 371), Mr. Chief Justice BEAN, discussing this subject, says:

"Where an estoppel is relied upon, the facts constituting it must be pleaded with particularity and precision, and it must be alleged that the party setting up the estoppel relied upon such facts believing them to be true, and will be prejudiced by allowing them to be disproved. Nothing can be supplied by inference or intendment."

86 Or.—12

To the same effect see, also, *McGregor* v. *Oregon R. & N. Co.,* 50 Or. 527 (93 Pac. 465, 14 L. R. A. (N. S.) 668); *Ashley* v. *Pick,* 53 Or. 410 (100 Pac. 1103); *Cooper* v. *Flesner,* 24 Okl. 47 (103 Pac. 1016, 20 Ann. Cas. 29, 23 L. R. A. (N. S.) 1180). A text-writer in commenting upon the legal postulate now under consideration observes:

"It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel": 11 Am. & Eng. Enc. Law (2 ed.), 434. See, also, upon this subject 10 R. C. L. 696, note 13, and cases cited thereunder.

2. It will be remembered that the answer denied any marriage engagement was ever entered into by the parties. If such a contract had ever been consummated, the parties hereto must have understood the terms of the agreement. That fact, if it existed, was, therefore, known to both, and hence no estoppel could arise from the separate defense thus set forth. Testimony offered by the defendant, however, to substantiate such averments. was received without objection. Thus the defendant and all his witnesses who were called on this branch of the case minutely detailed declarations imputed to the plaintiff wherein she frequently referred to his proposed marriage with Miss Roberts while she, a music teacher, was for about three years the companion of the defendant's mother. Addressing her conversation to his daughters the plaintiff often stated, "You will have Miss Roberts for a

stepmother." At a fashionable restaurant in Portland, Oregon, where were present others besides the defendant, Miss Roberts, and the plaintiff, the latter at a dinner, after the death of the defendant's mother, offered a toast to Mr. Woods and his contemplated bride, Miss Roberts, wishing them much happiness in their proposed union. Such testimony, though not evidencing an estoppel for the reason hereinbefore stated, was properly admissible under the general issue.

"The pleader," says a text-writer, "is not confined, however, to mere negative proof in denial of the facts stated by his adversary, but he may give evidence of independent facts inconsistent therewith which tend to meet and break down the cause of action or defense stated": 7 Standard Enc. of Proced. 91.

In *Tisdale* v. *Mitchell,* 12 Tex. 68, a headnote reads:

"Under the general denial, it seems, the defendant may prove a settlement, or admissions of the plaintiff, adverse to his right to recover in whole or in part."

3. The defendant thus having the benefit of the testimony tending to support his averments of an estoppel suffered no prejudice in the particular specified, and hence in striking out the separate defense complained of no error was committed.

4. It would probably have been more compatible with the general rules of practice if the motion to strike out the separate defense had stated that this part of the answer was "frivolous": Section 76, L. O. L.; Bliss, Code Plead., § 421. In *Farris* v. *Hayes,* 9 Or. 81, 87, it is said: "A pleading that is but a repetition of a former one adjudged insufficient may be regarded as frivolous." It will be kept in mind that one of the grounds stated in the motion was "that in a prior answer herein a demurrer to a similar defense was sus-

tained.'' Such assignment was equivalent to an assertion that the separate defense was frivolous.

An exception having been taken to parts of the court's charge it is contended that an error was committed in instructing the jury as follows:

"If you find from the evidence that the acts and declarations of the defendant were such as to induce the plaintiff to believe that there was an engagement between plaintiff and defendant to marry, and that plaintiff acted on that belief, and you further find that the defendant knowing plaintiff was acting on such belief, continued thereafter to act in a manner to induce the same, the law would not, in such case, permit defendant to deny that the engagement existed; in other words, if the parties entered into a contract to marry, and one of them did not intend to perform the promise when it was made, if it was not made in good faith, and the other party made the promise in good faith, and in reliance upon the promise made that party was deceived thereby, this want of good faith by one party would not prejudice the rights of the innocent party, nor affect the validity of the marriage contract.''

5. It is argued that as the complaint alleged an express contract of marriage and averred seduction under the promise thereof in aggravation of damages, and as the plaintiff testified that the defendant requested her to marry him, to which solicitation she acceded and thereupon promised to marry him, the engagement was definite, the instruction so quoted is outside the issue and predicated upon an estoppel which was not set forth by the plaintiff, and for that reason the part of the charge so challenged constitutes reversible error. In order to entitle a party to a suit or action in this state to rely upon an estoppel *in pais* it is incumbent upon him to set forth in his pleading the facts constituting such bar if he have a chance to do so: *First Nat.*

*Bank* v. *McDonald,* 42 Or. 257 (70 Pac. 901); *Union St. Ry. Co.* v. *First Nat. Bank,* 42 Or. 606 (72 Pac. 586, 73 Pac. 341); *Christian* v. *Eugene,* 49 Or. 170 (89 Pac. 419). Where, however, no opportunity arises to plead such estoppel, and the necessity therefor occurs at the trial of a cause upon the admission of evidence, the truth of such plea may be established in the absence of any averment to that effect: *Morback* v. *Young,* 58 Or. 135 (113 Pac. 22); *West Side Lumber & Shingle Co.* v. *Herald,* 64 Or. 210 (128 Pac. 1006, Ann. Cas. 1914D, 876); *Mascall* v. *Murray,* 76 Or. 637 (149 Pac. 517, 521).

6, 7. The bill of exceptions does not state that no evidence was offered at the trial tending to justify the giving of the instruction quoted. In the absence of a showing to that effect it will be taken for granted that testimony was received which authorized a reliance upon the estoppel *in pais* without pleading the facts constituting such bar and sanctioned the giving of the part of the charge so challenged. If testimony was received tending to show that one of the parties, without intending to keep or perform his engagement, promised to marry the other in order to secure from such person some favor which would not otherwise have been granted, except by a reliance upon such promise, he should not be permitted to show that his engagement was not made in good faith where the other party relying thereon was deceived thereby. The instruction was a proper expression of the law applicable to the facts, was within the implied issues, and no error was committed in giving it.

8. It is maintained that an error was committed in instructing the jury as follows:

"I instruct you that the mutual promises of a man and woman to marry each other, where they are each

of marriageable age and capacity, constitutes a valid contract to marry. No particular words are necessary to give rise to a contract to marry; it is sufficient that the minds of the parties have met, and that the engagement to marry is mutually agreed on. And if you find from the evidence in this case that plaintiff and defendant mutually promised and agreed to marry each other as alleged in plaintiff's complaint, and that the plaintiff prior to the commencement of this action requested defendant to marry her, and offered to marry defendant and that defendant repudiated his said promise, if any, to marry the plaintiff, and refused to marry plaintiff, and notified her that he would not marry her at all as alleged, then you should find for plaintiff in such sum, if any, as you find she has been damaged thereby.''

It is unnecessary that a contract of marriage should be reduced to writing, signed, sealed, witnessed, or acknowledged by the parties. The expression used in the instruction, ''No particular words are necessary to give rise to a contract to marry; it is sufficient that the minds of the parties have met, and that the engagement to marry is mutually agreed on,'' is almost a literal excerpt from 4 R. C. L. 145, note 17, where is cited the case of *Burnham* v. *Cornwell,* 16 B. Mon. (55 Ky.) 284 (63 Am. Dec. 529, 537), and almost the same language is employed. No error was committed in this respect.

9. It is insisted that the court erred in giving the following instruction:

''I instruct that if you find that the promise of marriage existed that it will then become your duty to assess damages, and you may take into consideration in assessing the damages, all the circumstances that have been laid before you on the trial. Consider the parties, their ages, their standing in society, their pecuniary condition, the loss which the plaintiff sustains in worldly emoluments by the breach of the con-

tract, the injury to her feelings, her prospects in life; the interruption which this contract of marriage has been, if any, to her profession, by which she might have changed her affairs, all these circumstances may be taken into consideration by you.''

It might seem that by the failure of the court to insert immediately following the word ''damages,'' as thus first used, the clause, ''if any have been suffered,'' this part of the charge was subject to criticism. In 4 R. C. L. 155, it is said:

''An action for a breach of a contract to marry, though in form an action of *assumpsit,* is in fact, and always has been, since it was sustained at common law, in respect to the question of damages, really in the nature of an action for tort.''

In a case of that kind evidence of a breach of the contract, without any proof of pecuniary loss, would entitle the injured party to nominal damages: *Glasscock* v. *Shell,* 57 Tex. 215, 224. The elements of compensatory damages as thus given by the court are a correct enumeration of the factors to be considered in computing the loss suffered by the injured party in such case: 4 R. C. L. 156. No error was committed in giving this part of the charge.

10. It is claimed an error was committed in instructing the jury as follows:

''You are further instructed that in this case it is not necessary that the seduction of the plaintiff by the defendant be directly proven. If that was so, it would seldom be proved. Positive evidence of the seduction is rarely possible, and resort may be had to circumstantial evidence from which the seduction may be inferred, if you find from the evidence in this case that the overt act is inferable from the circumstances proven in the case. There must be evidence of such facts and circumstances, times, and places, and associations together that would naturally lead a man of

ordinary care and prudence to the conclusion that such parties were having improper sexual relation.''

The sentence in the instruction which reads: ''If that was so, it would seldom be proved,'' is argumentative, and the language so employed is to be condemned: Blashfield, Instructions to Juries, § 68. In *Carroll* v. *Grande Ronde Electric Co.,* 52 Or. 370, 374 (97 Pac. 552), it was held that an instruction objected to on that ground was not subject to the interpretation undertaken to be placed upon it, thus showing that if the language used had been polemical the part of the charge would have been considered erroneous.

A part of this charge is patterned after instruction that was given in *Saxton* v. *Barber,* 71 Or. 230 (139 Pac. 334), and upheld in an action by a husband against his wife's paramour to recover damages for the alleged alienation of her affections, the complaint charging adultery as a means of accomplishing the estrangement. In a case of that kind it may safely be assumed that the guilty parties would, as witnesses, severally deny the commission of any overt acts as charged, thereby rendering it necessary to resort to proof of circumstances from which the guilt might reasonably be inferred. In the case at bar, however, there was no occasion to have recourse to such indirect method of substantiating the charge of seduction, for the plaintiff having appeared as a witness in her own behalf could have testified directly in relation to the offense. Though a different conclusion has been reached in other jurisdictions (*Wrynn* v. *Downey,* 27 R. I. 454 (63 Atl. 401, 114 Am. St. Rep. 63, 8 Ann. Cas. 912, 4 L. R. A. (N. S.) 615, 616), it has been held in this state that in an action for a breach of promise evidence of seduction under the promise was admissible in aggravation of damages, notwithstanding our

statute.    Section 36 (L. O. L.), gives to an unmarried woman over 21 years of age a right of action for her own seduction: *Osmun* v. *Winters,* 25 Or. 260 (35 Pac. 250).

In such case, while circumstantial evidence is admissible to corroborate the testimony of the woman, she should in an action of this kind, if appearing as a witness in her own behalf, directly testify to the commission of the overt act alleged as an aggravation of damages, and positively state upon oath that she yielded her virtue to the man's enticement to have unlawful intercourse with him while relying upon his promise of marriage.    To permit her to testify to the act of sexual connection and to allow the jury to infer therefrom that the loss of all that noble women hold dear in life was accomplished by reason of her reliance upon a promise of marriage, when she had given no testimony to that effect, might tend to magnify the offense of mere fornication, indulged in to gratify mutual passions, to the graver wrong of seduction where she was the reluctant victim of his rapacious lust.

11. It is incumbent upon a court to instruct the jury:

"That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust": Section 868, subd. 7, L. O. L.

That direction in a case of this kind might not remedy the lack of proof adverted to, for there being no foundation upon which the circumstantial corroborative evidence could rest or to which it could relate, the jury who are the sole judges of the effect and value of the evidence received, could nevertheless unjustly put the shadow in lieu of the substance, by invoking the

inference of seduction from testimony showing a mere unlawful intercourse.

In 35 Cyc. 1319, in discussing the subject of a civil action to recover damages for an alleged seduction under promise of marriage, it is said: "Where there is sufficient evidence in the case to support a verdict for plaintiff outside of her testimony, the judgment will not be disturbed, although plaintiff may be shown by the record to be untruthful"— citing in support thereof *Harmon* v. *Donohoe,* 153 Mo. 263 (54 S. W. 453). In that case the answer affirmatively alleged sexual intercourse with the plaintiff by her mutual consent and not under promise of marriage. The reply was a general denial. From the opinion handed down therein it is fairly inferable that the plaintiff testified in support of all the averments of her complaint. On cross-examination, however, she denied testifying before the grand jury of an attempted rape upon her by a person other than the defendant, when the record of the proceedings before that inquisitorial body and the testimony of the prosecuting attorney and of one of the grand jurors showed she did so testify. In referring to her contradictory statements made under oath, Mr. Justice MARSHALL, at page 269 of the opinion, makes the following comments:

"If the verdict in this case depended wholly upon the testimony of the plaintiff herself, we should feel justified in reversing it for this reason, but there is abundant testimony in this case outside of hers upon which to support the verdict."

It will thus be seen that the rule there announced does not trench upon the legal principle here sought to be applied.

In 35 Cyc. 1351, the author alluding to the prosecution of a criminal action for seduction, says:

"It has been held that the prosecutrix cannot testify to the motive which induced her to submit to intercourse with defendant, but the better opinion is to the contrary. Under note 24, see the cases cited in support of the text.

If in a criminal action the woman alleged to have been seduced is permitted to testify at the defendant's trial that she consented to the unlawful intercourse with him by reason of persuasion, solicitation, promises, bribes, or other means without the employment of force, and thereby be allowed to augment and substantiate the gravity of the offense charged, she should in a civil action for a breach of promise of marriage when seduction is alleged be required to state upon oath that she submitted to the sexual intercourse while relying upon such promise before she is entitled to have the issue of aggravated damages submitted to the jury. The innate chivalry of most jurors often prompts them to find in favor of a woman in an action of this kind, but they ought not to base the measure and recovery of damages sustained upon evidence of sexual intercourse alone, when she has not testified that her consent to the intercourse was induced by her reliance upon the defendant's promise of marriage. Upon principle such rule must be just: otherwise the door would be opened wide for the allowance of damages that should not be considered. An error was committed in giving the instruction last quoted.

12, 13. It is asserted that an error was committed in charging the jury as follows:

"In the present case the plaintiff testified to an engagement to marry, and also testified to acts of sexual intercourse; but there is no direct evidence in

the case that the plaintiff consented to such acts of intercourse, if in fact they occurred, because of the alleged engagement to marry, or in reliance thereon. I will state, however, in that connection, that this may, however, be inferred by you, if you see fit to do so.''

In 4 R. C. L., at page 160, the author remarks:

''It must be clearly shown that the seduction was accomplished by means of the promise, otherwise damages therefor are not warranted.''

In the case at bar the plaintiff knew whether or not the acts of illicit intercourse charged in the complaint were brought about by the defendant's enticements and whether she yielded to his solicitations while relying upon his alleged promise of marriage. The defendant in his answer and as a witness denied that any such intercourse was indulged in by him, and hence in order to substantiate the charge of seduction under promise of marriage it was essential that the plaintiff should have directly testified as to the particular acts now complained of and that they were induced by her reliance upon his promise.

Any other conclusion, where the man has not admitted the seduction under promise of marriage so as to render evidence thereof admissible, would permit the woman in an action of this kind to invoke the presumption of her virtue (35 Cyc. 1311), and without offering any testimony tending to show that the illicit intercourse resulted from her reliance upon the promise of marriage, have the jury infer from such presumption that the sexual intercourse was seduction and not fornication. An inference must be founded upon a fact legally proved: Section 796, L. O. L. True, a presumption is a species of indirect evidence: *Caraduc* v. *Schanen-Blair Co.*, 66 Or. 310 (133 Pac. 636); *Ward* v. *Queen City Fire Ins. Co.*, 69 Or. 347

(138 Pac. 1067).   The fact to be substantiated by a presumption, however, is admitted, but not legally proved, and hence an inference cannot be predicated upon a presumption: 10 R. C. L. 870.   It is there said:

"To hold that a fact inferred or presumed at once becomes an established fact for the purpose of serving as a base for a further inference or presumption would be to spin out the chain of presumptions into the regions of the barest conjecture."

No motion appears to have been made to have the question of aggravation of damages by reason of the lack of proof in the particular specified taken from the jury.   But however this may be, it is believed an error was also committed in giving the instruction last quoted.   A consideration of the other errors assigned has not been deemed essential in view of the necessity for a retrial.

For the errors committed in giving the two instructions last referred to the judgment is reversed and a new trial ordered.          Reversed and Remanded.

Mr. Chief Justice McBride, Mr. Justice Bean and Mr. Justice McCamant concur.